# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MANUEL CORDOVA,

    Plaintiff,

and

SOS STAFFING SERVICES, INC.,

    Intervenor,

v.                                          No. CIV-01-1026 WJ/JHG

PEAVEY COMPANY, a wholly owned
subsidiary of CONAGRA, INC., and
POARCH BROTHERS, INC.

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS COMPLAINT IN INTERVENTION

THIS MATTER comes before the Court pursuant to Defendant Peavey Company's Motion to Dismiss Complaint in Intervention [Docket No. 56]. Having reviewed the submissions of the parties, the Court finds that the motion to dismiss has been converted to a motion for summary judgment, and that Defendant Peavey is entitled to judgment as a matter of law with regard to all claims. The motion shall, therefore, be granted.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Manuel Cordova ("Plaintiff") was employed by Intervenor SOS Staffing Services, Inc. ("SOS"). On or about April 3, 2000, Plaintiff was working for Defendant Peavey Company ("Peavey") pursuant to a staffing agreement between SOS and Peavey. The agreement provided that SOS would secure and maintain workers' compensation insurance as required by state or

federal regulations. The agreement did not allow for Plaintiff to be working with or around machinery and trucks. The agreement and contract language on time sheets submitted by Peavey to SOS provided that Peavey would be responsible for bodily injury or property damage caused by an employee of SOS operating equipment or vehicles owned by Peavey. Finally, the agreement provided that SOS would indemnify Peavey for any injury to workers to the extent the injury was not the result of Peavey's negligence. While working for Peavey at Peavey's place of business, Plaintiff was injured around a piece of machinery known as a grain auger.

Plaintiff filed a Complaint for recovery of damages from Peavey on the theory of negligence. Additionally, Plaintiff alleged that he is entitled to recover damages from Peavey for Peavey's breach of the staffing agreement between SOS and Peavey. SOS filed its complaint in intervention seeking to recover damages from Peavey for breach of the staffing agreement.

Peavey filed the instant Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint in intervention for failure to state a claim. Peavey argues that it was Plaintiff's special employer. Thus, under New Mexico law, the Workers' Compensation Act is the exclusive remedy against Peavey. Additionally, Peavey contends that, even if the Workers' Compensation Act does not bar SOS's claims against Peavey, SOS cannot seek reimbursement from Peavey for the workers' compensation benefits paid to Plaintiff; any right of SOS to reimbursement may only be maintained against Plaintiff. SOS responds that Peavey cannot shield itself from liability by arguing that the Workers' Compensation Act is the exclusive remedy because Peavey relinquished its statutory protection by an express indemnification agreement with SOS. Additionally, SOS also argues that Peavey does not meet the requirements of a special employer.

Finally, SOS asserts that it may maintain a direct action against Peavey for breach of contract without regard to Plaintiff's rights to seek damages from Peavey for work related injuries.

**STANDARD OF REVIEW**

As noted above, Peavey's motion was filed as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Peavey attached as an exhibit to its motion what Peavey purported, without sufficient foundation, to be the staffing agreement between Peavey and SOS. In its response to the motion, SOS attached as an exhibit, also without sufficient foundation, what it purported to be the staffing agreement between Peavey and SOS. Peavey, in its reply, challenged the foundation for SOS's offered evidence. SOS was permitted to file a surreply in which it provided affidavits in support of its proffered agreement. Peavey then filed a response to the surreply in which it continued to dispute whether SOS's proffered agreement was the agreement in effect at the time of Plaintiff's injury.

SOS urges that the Court must treat the motion as one for summary judgment now that affidavits have been filed. Peavey argues that the Court may exclude the matters outside the pleadings and thus treat the motion as a motion to dismiss without converting it to a Rule 56 motion for summary judgment. The arguments made by the parties cannot be determined by the Court without reference to the purported agreement of the parties, and a determination of the agreement requires the Court's consideration of matters outside the pleadings. Thus, in accordance with Rule 12(b), Peavey's motion will be treated as one for summary judgment and disposed of as provided for in Rule 56.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Worrell v. Henry, 219 F.3d 1197,

1204 (10th Cir. 2000). In ruling on a motion for summary judgment, a court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998). In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party. Worrell, 219 F.3d at 1204; Jeffries, 147 F.3d at 1228. For purposes of this motion, the Court will assume that SOS's proffered staffing agreement was in effect at the time of the events at issue in this case.

**DISCUSSION**

I.  IS PEAVEY ENTITLED TO THE IMMUNITY PROVIDED BY THE NEW MEXICO WORKERS' COMPENSATION ACT?

Under the New Mexico Workers' Compensation Act, an employer and employee surrender their rights to any compensation or cause of action for work related injuries or death except as provided for in the Act. N. M. Stat. Ann. 1978 § 52-1-6(D) (Michie 1991). Additionally, an employer that has complied with the provisions of the Workers' Compensation Act is not subject to any other liability for personal injury to an employee. N.M. Stat. Ann. 1978 §§ 52-1-6(E), 52-1-8 and 52-1-9. A worker may seek redress from a third party even after the worker has received workers' compensation benefits from the employer. Matkins v. Zero Refrigerated Lines, 602 P.2d 195, 197 (N.M. App. 1979). However, a temporary employer is provided the immunity afforded by the Workers' Compensation Act when it meets the test of a special employer and pays for workers' compensation benefits. Vigil v. Digital Equip. Corp., 925 P.2d 883 (N.M. App. 1996).

4

A. Did Peavey Pay for Workers' Compensation Benefits?

New Mexico law provides that a contract employer may pay for workers' compensation benefits indirectly by payment to the employment agency. Id. at 885. If a contract employer such as Peavey arranges and pays for workers' compensation insurance, the fact that the staffing agreement between the contract employer and the staffing agency does not spell out the parties' obligations is immaterial. Id. at 886.

In Vigil, the plaintiff brought a tort action against his contract employer. Id. at 884. His work for the contract employer was covered by a staffing agreement between the contract employer and the staffing agency. Id. The agreement required the staffing agency to carry workers' compensation insurance for its employees. Id. The terms of the agreement did not contain any express condition that the contract employer's payments to the staffing agency included payments for the agency's purchase of the insurance. Id. at 885. The court held that the contract employer had paid for the workers' compensation insurance through the full price paid for the worker's wages. Id.

This case is indistinguishable from Vigil with regard to the payment for workers' compensation insurance. The agreement between Peavey and SOS required SOS to secure and maintain insurance, and the agreement did not contain any express condition that Peavey's payments to SOS included the cost of the insurance. In accordance with Vigil, I find that Peavey arranged for compliance with the Workers' Compensation Act and ultimately paid for the workers' compensation insurance.

B. Does Peavey Meet the Test of a Special Employer?

5

A contract employer is a special employer when three conditions are met. Vigil, 925 P.2d at 886; Rivera v. Sagebrush Sales, Inc., 884 P.2d 832, 834-35 (N.M. App. 1994). First, the employee must have made a contract of hire, either express or implied, with the contract employer. Rivera, 884 P.2d at 834-35. Second, the work being done is essentially that of the contract employer. Id. Finally, the contract employer has the right to control the details of the work. Id.

An employee has made a contract for hire if he has consented to the employment relationship. Id. In Rivera, the employee's acceptance of the employment agency's assignment to the contract employer was sufficient to establish as a matter of law that an implied contract for hire existed between the employee and the contract employer. Id. In accordance with Rivera, I find that an implied contract for hire existed between Plaintiff and Peavey and the first prong of the special employer test is met. Additionally, the work performed by Plaintiff at Peavey's place of business was clearly the work of Peavey, and the second prong of the special employer test is also met.

SOS argues that Peavey did not have the right to control the details of Plaintiff's work and thus fails to meet the third prong of the special employer test. SOS relies on the language in the staffing agreement that did not allow Peavey to have SOS's employees working with or around machinery or trucks. SOS argues that this limit on Peavey's use of SOS's employees means that Peavey fails to meet the third prong of the special employer test.

In Rivera, the plaintiff argued that his contract employer did not meet the third prong of the test because he often performed work for the contract employer with little or no supervision and because the contract employer had no right to fire plaintiff from his employment with the

6

employment agency. Id. at 835-36. The court found that these facts did not create an issue of fact with regard to the contract employer's right to control the details of the plaintiff's work.

In this case, SOS does not argue that someone other than Peavey was responsible for supervising and directing Plaintiff's work at Peavey's place of business. That there was language in the staffing agreement purporting to limit Peavey's ability to assign Plaintiff to certain tasks does not create a fact issue with regard to whether Peavey had control over the details of Plaintiff's work. Plaintiff was working at Peavey's place of business under the supervision of Peavey employees. Thus, I find that Peavey was Plaintiff's special employer, arranged and paid for workers' compensation insurance through SOS, and is entitled to the immunity afforded by the New Mexico Workers' Compensation Act.

II.  DID PEAVEY RELINQUISH ITS STATUTORY PROTECTION BY ENTERING INTO AN EXPRESS INDEMNIFICATION AGREEMENT WITH SOS?

An employer that is otherwise entitled to the immunity afforded by the New Mexico Workers' Compensation Act may relinquish this statutory protection by entering into an express indemnification agreement. City of Artesia v. Carter, 610 P.2d 198 (N.M. App. 1980). However, where there is no express contract of indemnity, the exclusive remedy provision of the Workers' Compensation Act grants amnesty to an employer for all causes of action relating to an employee's injuries regardless of the question of an independent breach of duty. Royal Indem. Co. v. Southern California Petroleum Corp., 353 P.2d 358, 360 (N.M. 1960). A party may not seek indemnification from an employer based upon an implied indemnification agreement. Id. at 362.

7

SOS argues that there is an express indemnification agreement between itself and Peavey that permits SOS to seek indemnification from Peavey for Plaintiff's injuries. SOS points to language in its proffered staffing agreement and on employee time cards for support of its argument. The staffing agreement states in paragraph c that:

> [SOS] will secure and maintain workers compensation insurance as well as liability insurance that will cover its employees as required by State and Federal regulations. However, the insurance provided by [SOS] does not cover the loss or damage caused by the operation of [Peavey's] equipment, vehicles, automobiles, or trucks by our employees. [Peavey] shall accept full responsibility for injury or damage to persons and/or property resulting from our employees operation of [Peavey]-owned or rented equipment or vehicle.

[Exhibit 1 to SOS's Response].

The language on SOS's employee time cards states:

> [Peavey] agrees not to allow [SOS's] employees to work at heights over 12 feet or to work in any underground facility, or to operate machinery, automotive or truck equipment without prior written consent from [SOS]. It is agreed the insurance furnished by [SOS] does not cover claims involving pollution damage, messengers, or [Peavey's] automobiles, trucks, or other types of movable equipment or vehicles . . . operated by [SOS's] employees. It is agreed that [Peavey] accepts full responsibility for bodily injury, property damage, fire, theft, collision or public liability damage claims while an [SOS] employee is driving the vehicle whether owned, hired, or non-owned.

[Exhibit A to Defendant's Memorandum in Support].

The issue turns on whether the above language constitutes an express indemnification agreement between the parties. The language clearly contemplates that Peavey will carry its own liability insurance with regard to its vehicles and movable equipment such that SOS will have no liability to third persons who suffer personal injury or property damage as a result of the operation of the vehicles and movable equipment by SOS's employees. However, it does not apply to or address injuries to SOS's employees that are compensable through workers' compensation

8

insurance and it does not expressly require Peavey to indemnify SOS. I find that, as a matter of law, there is nothing in the contract language in these documents by which Peavey waives or relinquishes its statutory protections under the New Mexico Workers' Compensation Act. This language does not constitute an express indemnification agreement between SOS and Peavey that requires Peavey to indemnify SOS for workers' compensation claims paid by SOS to Peavey's special employees.

III.   MAY SOS BRING A DIRECT ACTION AGAINST PEAVEY FOR BREACH OF THE STAFFING AGREEMENT?

The issue whether SOS's cause of action may be maintained against Peavey is largely answered in the negative by the above analysis. However, SOS argues that it is entitled to bring its current claim against Peavey even if it would be precluded by the exclusive remedy provisions of the New Mexico Workers' Compensation Act from seeking indemnification or a right of reimbursement from Peavey. SOS's claim against Peavey alleges a breach of contract and is not a claim in tort or a claim for reimbursement or indemnification. SOS alleges that Peavey breached the staffing agreement by assigning Plaintiff to work around machinery. SOS contends that its direct action against Peavey is not premised on Peavey's purported violation of a duty imposed by common law or by the New Mexico Workers' Compensation Act and thus may be maintained irrespective of Plaintiff's right to sue Peavey for his work-related injuries.

While SOS's argument has initial appeal, it flies in the face of statutory language and case law. The Workers' Compensation Act states that:

> Any employer who has complied with the provisions of the Workers' Compensation Act relating to insurance or any of the employees of the employer, including management and supervisory employees, shall not be subject to any other liability whatsoever for the death or personal injury to any employee except

> as provided in the Workers' Compensation Act, and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common-law rights and remedies for and on account of such death of, or personal injury to, any such employee and accruing to any and all persons whomsoever, are hereby abolished except as provided in the Workers' Compensation Act.

N.M. Stat. Ann. 1978 § 52-1-8.

In addition to the statutory language, the court in <u>Royal Indem. Co.</u> also addressed this issue and concluded that an action for breach of contract would not lie in the face of the exclusive remedy provisions of the New Mexico Workers' Compensation Act. 353 P.2d at 362. In that case, an employee of a contractor was injured at a work site owned by a petroleum company. <u>Id.</u> at 360. There was no issue in the case with regard to the plaintiff employee's cause of action against the petroleum company. At issue was whether the petroleum company had a cause of action against the contractor. <u>Id.</u> One of the petroleum company's claims against the contractor was a claim for breach of contract. <u>Id.</u> The court found that the trial court had correctly dismissed the petroleum company's causes of action against the contractor on the basis of the New Mexico Workers' Compensation exclusive remedy provisions. <u>Id.</u> at 362.

The language of the New Mexico Workers' Compensation Act does not limit its exclusive remedy provisions in such a way as to protect employers only from actions in tort or actions based on common law. The statutory language clearly protects an employer from any and all proceedings of any type for or on account of personal injury to an employee. SOS seeks damages including the amounts it has paid to compensate Plaintiff's injuries by alleging that the injuries were the result of Peavey's breach of the staffing agreement between Peavey and SOS. This is an action for or on account of an employee's personal injury. Based on the clear language of the New Mexico Workers' Compensation Act as well as New Mexico case law interpreting that Act, I

10

find that SOS's claim against Peavey for breach of contract is precluded by the exclusive remedy provisions of the New Mexico Workers' Compensation Act.

While the current motion asks only that the Court determine whether SOS may maintain its cause of action against Peavey, the reasoning and conclusion of the Court leads to the necessary decision that Plaintiff may not maintain an action against Peavey for his injuries and all claims in this case against Peavey are precluded by the New Mexico Workers' Compensation Act. Thus, this Court *sua sponte* grants summary judgment to Peavey on all claims.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Peavey Company's Motion to Dismiss Complaint in Intervention [Docket No. 56] is hereby GRANTED.

IT IS FURTHER ORDERED that all claims against Defendant Peavey Company are hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE