# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MANUEL CORDOVA,

    Plaintiff,

and

SOS STAFFING SERVICES, INC.,

    Intervenor,

v.                                                                                      No. CIV-01-1026 WJ/JHG

PEAVEY COMPANY, a wholly owned
subsidiary of CONAGRA, INC., and
POARCH BROTHERS, INC.

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court pursuant to Defendant Peavey Company's Motion for Summary Judgment **[Docket No. 119]** and Defendant Peavey Company's Corrected Motion for Summary Judgment **[Docket No. 121]**. Having reviewed the submissions of the parties and the applicable law, I find that Defendant Peavey Company is entitled to judgment as a matter of law. Accordingly, the Motion for Summary Judgment and Corrected Motion for Summary Judgment[1] shall be granted.

---

[1] The "corrected" motion for summary judgment consists solely of a correction for an unintended typographical error.

**Factual Background**

For purposes of this motion, the facts of this case are undisputed. Plaintiff Manuel Cordova (Plaintiff) was employed by Intervenor SOS Staffing Services (SOS), a temporary staffing agency. On or about April 3, 2000, Plaintiff was working for Peavey Company (Peavey)[2] pursuant to a staffing agreement between Peavey and SOS. While working for Peavey through SOS, Plaintiff got his arm caught in a grain auger resulting in the loss of the arm. Plaintiff filed the instant suit against Peavey and the manufacturer of the grain auger, Poarch Brothers, Inc.

The temporary staffing contract between SOS and Peavey specifically prohibited temporary workers from working on or around machines, at heights or at any task other than sweeping and shoveling. Betty Jones, the manager for SOS, repeatedly reminded Peavey managers that SOS employees were not to be used in or around machinery or to operate trucks or automobiles.

Plaintiff was injured at work on a Monday, his third day working for Peavey. On the preceding Saturday, Plaintiff was told to help load grain, an operation that required use of the auger on which Plaintiff was injured. On that Saturday, Plaintiff was assigned to lubricate the running auger by standing on top of a truck. Plaintiff also did some loading of grain and switched the auger on and off a few times.

On the Monday that Plaintiff was injured, he was instructed by his supervisor at Peavey to service a truck in preparation for grain loading and then to go help load grain. Plaintiff serviced the truck and then moved it near a barn where the grain and grain auger were located. Plaintiff parked the truck 150 to 200 feet from the auger.

On the day Plaintiff was injured, Juan Vasquez (Vasquez), another SOS temporary employee, was working around the grain auger when Plaintiff arrived at the barn. Plaintiff did not

---

[2]According to its Answer, Peavey is a subsidiary of Conagra, Inc.

consider Vasquez to be a supervisor or someone who could tell Plaintiff what to do. At the time Plaintiff arrived at the barn, Vasquez was lubricating the auger.

After Vasquez finished lubricating the auger, he walked to an area between the auger and the back of the tractor. Plaintiff then walked around to the front of the auger. At this time, the tractor engine was running, but the auger was not engaged. Plaintiff then noticed some grain in the auger and a piece of twine on one of its teeth. Plaintiff reached into the auger to sweep out the grain and remove the piece of twine. Plaintiff testified in his deposition that he was not instructed by anyone to do this and knew that reaching into the auger was a dangerous thing to do.

As Plaintiff reached into the auger, Vasquez engaged the auger and Plaintiff's arm was pulled into the machinery. Plaintiff did not tell Vasquez that he was in front of the auger or that he was reaching into the auger. When Vasquez engaged the auger from the tractor's power takeoff, he was unable to see Plaintiff from this vantage point because of an extension that was previously installed by Peavey onto the back of the auger. Vasquez and Plaintiff were unsupervised at the location and time of Plaintiff's injury.

At the time of the accident, there was no guard on the auger.[3] Additionally, there were no lock-out/ tag-out procedures to prevent the auger from being engaged. Neither Plaintiff nor Vasquez had received any training with regard to the operation or maintenance of the auger, and Peavey did not offer specific training for the operation or maintenance of the auger.

---

[3]Peavey subsequently fabricated a guard for the auger that would have prevented Plaintiff's injury had it been in place at the time of the accident. Plaintiff asserts that this is an undisputed material fact relevant to the motion for summary judgment. However, evidence of this subsequent remedial measure is not admissible at trial to prove culpable conduct, or to establish the need for a warning or instruction pursuant to Fed. R. Evid. 407. Thus, the Court does not consider this fact in ruling on the motion for summary judgment.

Steve Warner (Warner), the supervisor for Peavey at the time of Plaintiff's injury, admitted that if he had seen Plaintiff doing maintenance on the auger, he would have stopped him. Warner also testified that he was not aware of any OSHA regulations with regard to employee training or ANSI or ASAE[4] standards relating to grain augers. Warner admitted that he sometimes allowed workers to turn the auger on and off from outside the tractor.

## Procedural Background

By Memorandum Opinion and Order filed October 4, 2002 [Docket No. 87], I dismissed the Complaint in Intervention by SOS pursuant to Peavey's Motion to Dismiss Complaint in Intervention [Docket No. 56]. In reaching my decision with regard to the Complaint in Intervention, I determined that Peavey was Plaintiff's special employer under New Mexico law and thus was entitled to the protections of the exclusivity provisions of the New Mexico Worker's Compensation Act (NMWCA), N.M. Stat. Ann. 1978 §§ 52-1-6(D) an (E), 52-1-8, and 52-1-9 (Michie 1991). Based on this legal conclusion, I also dismissed, *sua sponte*, Plaintiff's claims against Peavey.

Plaintiff filed a motion for reconsideration in which he argued that he was entitled to pursue his claims against Peavey based on the recent decision of the New Mexico Supreme Court in Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148 (NM 2001). The Delgado Court held that a worker can proceed against his employer for work related injuries when the employer has willfully injured the worker. Id. at 1155. Because I had not considered this issue in dismissing *sua sponte* Plaintiff's claims against Peavey, I granted the motion for reconsideration [Docket No. 99]. On January 24, 2002, a hearing on reconsideration was held. Upon reconsideration, I ordered that Peavey be reinstated as a Defendant [Docket No. 109]. The Order made clear that

---

[4] Nowhere in the parties submissions or in the record is ANSI or ASAE defined. The Court assumes OSHA refers to the Occupational Safety and Health Administration.

4

the only potential claim against Peavey would be a claim based on a theory that Peavey willfully injured Plaintiff. Additionally, I ordered that pretrial deadlines be extended in order to afford parties the opportunity to file further dispositive motions. Peavey filed the instant motion for summary judgment arguing that Plaintiff cannot present evidence in support of a claim that Peavey willfully injured Plaintiff.

**Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by demonstrating to the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). All reasonable factual inferences must be drawn in favor of the nonmoving party. Seamons v Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998). However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v Interstate Brands Corp., 252 F.3d 1111 (10th cir. 2001). In setting forth facts, the nonmoving party need not present evidence in a form admissible at trial, but the content or substance of the evidence must be admissible. Adams v. American Guarantee and Liability Ins. Co., 233 F.3d

5

1242, 1246 (10th Cir. 2000).  In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### Discussion

The only claim remaining against Peavey is a claim based on a theory that Peavey willfully caused Plaintiff's injuries.  The New Mexico Supreme Court in Delgado made a significant change in the law with regard to tort claims by injured workers against their employers.  Before Delgado, an employer who intentionally caused a worker's injury could be sued in tort by the injured worker notwithstanding the exclusivity provisions of the NMWCA.  Delgado , 34 P.3d at 1153.  However, the injured worker had to show that the employer's actual intent was to cause injury to the worker.  Id. at 1153-54.

In Delgado, Plaintiff Reynaldo Delgado (Delgado) worked at a Phelps Dodge Chino, Inc. (Phelps Dodge) smelting plant.  The plant operation involved heating rock to temperatures exceeding 2000 degrees Fahrenheit in order to remove ore from the rock.  After ore was removed from the rock, the remaining molten rock, or slag, was discarded into a large iron cauldron. When the cauldron was reaching capacity, the flow of slag was stopped in order to remove and replace the cauldron.  On June 30, 1998, Delgado's work crew was encouraged by Phelps Dodge supervisory employees to work harder to compensate for a loss of production and revenues experienced by Phelps Dodge as a result of a ten day shut down of the plant.  During Delgado's shift on June 30, an emergency situation arose when the cauldron was reaching capacity and the

flow of slag could not be stopped.  Phelps Dodge supervisors could have shut down the furnace in order to stop the flow of slag and then safely remove the cauldron.  However, in order to avoid further loss of production and revenue, Phelps Dodge supervisors ordered Delgado to remove the cauldron while molten slag was running over the brim.

When Delgado entered the area where the cauldron was located, he noted that the cauldron was overflowing.  He called his supervisors to inform them that he was neither qualified nor able to perform the removal.  The Phelps Dodge supervisors insisted Delgado proceed,  he protested a second time, and the supervisors again insisted he proceed.  Delgado entered the tunnel where the cauldron was located.  Shortly thereafter, the lights shorted out and smoke belched out of the tunnel opening.  Delgado emerged from the smoke-filled tunnel engulfed in flames and collapsed.  Delgado died three weeks later from third-degree burns over his entire body.

In Delgado, the New Mexico Supreme Court stated that the requirement for actual intent was absurd; an employer could send its worker into a situation where the employee was certain to be injured and the employer would enjoy the protections of the exclusive remedy provisions of the NMWCA provided the employer's actual intent was something other than to cause the injury.  Id. at 1154.  The Delgado court noted that the actual intent test provided an employer with virtual absolute immunity from tort suits for abusing its workers in an unlimited variety of ways provided that the abuse was motivated by economic gain or greed rather than an intent to injure its workers.  Id.  Accordingly, the New Mexico Supreme Court held that an employer would lose its rights under the NMWCA and be subject to a cause of action in tort when it willfully or intentionally caused injury to an employee.  Id. at 1155-56.

I view the New Mexico Supreme Court's reasoning in Delgado as an effort to equalize the treatment of workers and employers under the NMWCA because the NMWCA requires that  its

statutory provisions be construed in a manner that shows no favor for either workers or employers. N.M. Stat. Ann. 1978 § 52-5-1. Under the NMWCA, a worker loses his right to compensation if he willfully or intentionally causes his own injury. N.M. Stat. Ann. 1978 § 52-1-11. Thus, the New Mexico Supreme Court determined that employers also would lose their rights to protection for willfully or intentionally causing a worker's injury. Id. at 1154.

The New Mexico Supreme Court went on to articulate a three prong test to be used to determine whether an employer has acted willfully. Willfulness renders a worker's injury non-accidental and therefore outside the scope of the NMWCA when (i) the employer engages in an intentional act or omission without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (ii) the employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (iii) the intentional act or omission proximately causes the injury. Id. at 1156.

Peavey argues that the facts of this case, as a matter of law, do not support a claim that it willfully caused Plaintiff's injury. Plaintiff counters that, under a strict reading of the legal test defined by the New Mexico Supreme Court, the facts of this case raise an issue as to whether Peavey acted willfully to cause Plaintiff's injury. In order to survive summary judgment, Plaintiff must establish an inference of the presence of each element essential to the case. Bausman, 252 F.3d 1111.

*First Prong*

The first prong is an objective inquiry into whether a reasonable employer would expect the injury suffered by the worker to flow from the intentional act. Delgado, 34 P.3d at 1156. Thus, the relevant inquiry under this first prong is whether Peavey engaged in intentional acts or omissions without just cause or excuse that were reasonably expected to result in Plaintiff's injury. The Delgado court clearly defined this first prong as requiring general foreseeability. Id.

8

Plaintiff argues that the first prong is met because Peavey intentionally committed several acts or omission without just cause or excuse that were reasonably expected to result in Plaintiff's injury. These intentional acts or omissions include assigning Plaintiff to tasks prohibited by the staffing agreement between Peavey and SOS, installing an extension on the auger in a manner that blocked the view of the operator, failing to install a guard on the auger, failing to train Plaintiff in the operation and maintenance of the auger, failing to provide Plaintiff with safety training, failing to supervise Plaintiff, failing to use lock-out/tag-out procedures, and failing to be aware of OSHA regulations or ANSI or ASAE standards relating to grain augers.

I do not find that Peavey's assignment of certain tasks to Plaintiff was reasonably expected to result in the loss of his arm. Despite the fact that Peavey assigned Plaintiff to tasks prohibited by the staffing agreement, and failed to install a guard on the auger, Plaintiff is stretching the concept of forseeability too far to say that Vasquez's engagement of the auger at the same time that Plaintiff stuck his arm in the auger was somehow foreseeable. Unlike the plaintiff in Delgado, who was ordered by his employer to enter a situation where plaintiff was almost certain to die or be seriously injured, Plaintiff Cordova was not instructed to reach into the auger. Furthermore, Plaintiff knew that sticking an arm into an auger was a dangerous thing to do. Thus, the undisputed facts surrounding Plaintiff's injury fail to meet the requirements of the first prong.

***Second Prong***

The second prong requires an examination of the subjective intent of the employer. Id. at 1156. According to Delgado, if the employer decided to engage in the act or omission without considering its consequences, the second prong is satisfied. Id. If the employer did consider the consequences, the second prong will be satisfied only if the employer expected the injury to occur. Id.

Here, there is no evidence that Peavey expected any of its actions to result in Plaintiff's injury or that Peavey utterly disregarded the consequences of these actions. On the facts of this case, I find that Peavey could not have utterly disregarded consequences that are not reasonably foreseeable nor could Peavey have reasonably expected Plaintiff's injury to have occurred. Further, the facts relative to subjective intent are clearly distinguishable from those in Delgado, where one is easily repulsed by the insensitivity of Phelps Dodge Supervisors to what had to be most certainly a disastrous outcome for the employee.

### *Third Prong*

The third prong is a standard proximate cause requirement. Having determined that Plaintiff has failed to show that Peavey engaged in intentional acts or omissions that were reasonably expected to result in Plaintiff's injury or that Peavey subjectively expected its acts or omissions to result in the injury or utterly disregarded the consequences of its acts or omissions, I need not address whether Plaintiff has shown that these acts or omissions proximately caused Plaintiff's injuries.

### Conclusion

There is no indication in the Delgado opinion that the New Mexico Supreme Court, in replacing the "actual intent" test with a three-pronged inquiry to determine "willfulness," intended to eviscerate other essential provisions of the NMWCA, or otherwise affect the NMWCA's applicability to worker injuries caused by negligence. See N.M. Stat. Ann. 1978 § 52-1-10(B).[5]

---

[5] In a case in which a worker is injured or dies as a result of the failure of an employer to provide safety devices required by law or in any industry in which safety devices are not prescribed by statute, if an injury to, or death of, a worker results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the worker, then the compensation otherwise payable under the NMWCA shall be increased ten percent. This unambiguous statutory language shows a legislative intent that the NMWCA apply to worker injuries caused by an employer's failure to supply reasonable safety devices.

Peavey's conduct towards Plaintiff may well have been negligent; however, the new test enunciated by the Delgado Court envisions conduct that is well above negligence.

The undisputed facts do not establish that Plaintiff's claims against Peavey fall under the willful, intentional acts exception to the NMWCA, as enunciated by the New Mexico Supreme Court in Delgado. Accordingly, I conclude as a matter of law that Plaintiff's claims against Peavey Company are barred by the exclusive remedy provision of the NMWCA.

**THEREFORE**,

**IT IS ORDERED** that Defendant Peavey Company's Motion for Summary Judgment **[Docket No. 119]** and Defendant Peavey Company's Corrected Motion for Summary Judgment **[Docket No. 121]** are GRANTED and Plaintiff Cordova's claims against Defendant Peavey Company are **DISMISSED WITH PREJUDICE**.

UNITED STATES DISTRICT JUDGE