IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL CORDOVA,

    Plaintiff,

v.     Civil No. 01-1026 WJ/KBM

PEAVEY COMPANY, et al.,

    Defendants,

and

ALLSTATE INSURANCE COMPANY, INC.,

    Garnishee.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
AND SETTING REMAINING ISSUES RAISED IN ALLSTATE'S
AND PLAINTIFF'S CROSS MOTIONS FOR SUMMARY JUDGMENT FOR HEARING**

THIS MATTER comes before the Court pursuant to Allstate Insurance Company's Motion for Summary Judgment [Docket No. 196] and Plaintiff Cordova's Motion for Summary Judgment [Docket No. 200]. Having reviewed the submissions of the parties and being fully advised on the relevant law, I find that Allstate's motion is well taken in part and will be granted in part. The Court will hear oral argument on remaining issues raised in the motions as explained herein.

**BACKGROUND**

Plaintiff suffered the loss of his right arm in an accident involving a grain auger manufactured by Poarch Brothers. The accident occurred in Clovis, New Mexico on April 3, 2000. At the time of the accident, the grain auger was owned by Peavey Company which had

purchased the auger from Curtis & Curtis Seed Company in approximately 1993 which had, in turn, purchased the auger from Poarch Brothers in approximately 1973. Thus, it is undisputed that, at the time of the accident, the grain auger was not in the possession or control of Poarch Brothers.

Plaintiff filed the instant suit against Peavey Company and Poarch Brothers on September 5, 2001.[1]  With regard to Poarch Brothers, Plaintiff's First Amended Complaint [Docket No. 43] made the following factual allegations:

- The grain auger manufactured by Poarch Brothers was defective when manufactured and delivered in that it failed to incorporate and use safety guards, shields and protections.  Complaint ¶ 16.

- Poarch Brothers failed to provide safety decals or adequate safety operation manuals to prevent injuries.  Complaint ¶ 17.

- Poarch Brothers failed to use ordinary care in formulating, designing, making, inspecting, and testing the product and in sending the product into the field without eliminating the dangers which a reasonably prudent person with knowledge of the risks would find unacceptable.  Complaint ¶ 18.

- Poarch Brothers knew or should have known that the risk of injury on the defective auger and that it ought to have used a higher standard of care in the inspection, design and in providing the auger to be used by persons such as the Plaintiff.  Complaint ¶ 20.

- Poarch Brothers is liable to the Plaintiff for harm proximately caused by its negligence and the unreasonable risk of injury resulting from the condition of the product or from a manner of its use.  Complaint ¶ 22.

---

[1] By Memorandum Opinion and Order filed July 16, 2003, this Court granted summary judgment in favor of Peavey Company on Plaintiff's claims.  See Cordova v. Peavey Co., 273 F.Supp.2d 1213 (D.N.M. 2003).

- Poarch Brothers is liable for negligence in the sale of the property in an unreasonably dangerous condition such that persons such as Plaintiff would be injured by it. Complaint ¶ 25.

- Poarch Brothers breached a duty to use ordinary care to avoid foreseeable risks of injury caused by a condition of its product or the manner in which the product is used by persons who can reasonably be expected to use the product. Complaint ¶ 26.

- Poarch Brothers breached its continuing duty to exercise ordinary care to avoid risks caused by a condition of a product or manner in which it could be used that a supplier learns of after its product has left its possession. Complaint ¶ 27.

- Poarch Brothers failed to warn of the risk of injury in the use of the auger without the use of safety guards or shields and/or how to use safety guards and shields were they to be provided. Complaint ¶ 30.

- Poarch Brothers is liable for their failure to follow "appropriate State and Federal regulations and statutes with regard to safety devices, protection and training." Complaint ¶ 37.

Allstate Insurance Company ("Allstate") issued two policies to Poarch Brothers: (1) a commercial general liability policy, No. 49 647370 ("the Primary Policy"); and (2) a commercial umbrella/ excess liability policy No. 049 62639 UEL ("the Umbrella Policy"). The policies were in effect from February 8, 2000 to February 8, 2001. Joe Lovell, Esq., an attorney licensed to practice law in the State of Texas, represented Poarch Brothers for many years. When Poarch Brothers was named as a Defendant in this case, Mr. Lovell tendered the defense to Allstate. Allstate accepted the tendered defense and undertook to defend Poarch Brothers without a reservation of rights. Allstate hired the Albuquerque law firm of Simone, Roberts & Weiss to represent Poarch Brothers in this case. Attorneys for the firm entered their appearance on behalf of Poarch Brothers on October 15, 2001. See Docket No. 6. Allstate withdrew their defense of

3

Poarch Brothers in this action at the end of February of 2002. Timothy Newsom of the Texas law firm of Lovell, Lovell, Newsom & Isern, L.L.P., was granted leave to appear in this case *pro hac vice* on February 28, 2002. See Docket No. 25. Mr. Lovell was given leave to appear in this case *pro hac vice* on May 21, 2002. See Docket No. 53. The attorneys at Simone, Roberts & Weiss who were originally hired by Allstate to defend in this action were permitted to withdraw from this case on January 24, 2003. See Docket No. 106.

Mr. Lovell continued his representation of Poarch Brothers until the Court permitted him to withdraw by Order filed April 8, 2003. See Docket No. 125. Mr. Lovell had moved to withdraw based on Poarch Brother's inability to pay its attorneys' fees, and Poarch Brothers, through its President Ken Walser, consented to the withdrawal after notice that Poarch Brothers could not appear in this case without counsel. See Docket No. 123. Poarch Brothers never obtained new counsel in the case and never participated further in defending the case. By Memorandum Opinion and Order filed September 12, 2003, the Court entered default judgment against Poarch Brothers on the issue of liability. See Docket No. 151. By Memorandum Opinion and Order filed October 29, 2003, after reviewing evidence submitted by Plaintiff, the Court awarded default damages from Poarch Brothers to Plaintiff in the amount of $3,803,593.44. See Docket No. 156. A final judgment was entered on these damages on October 29, 2003. See Docket No. 157.

On February 23, 2004, Plaintiff began these collateral proceedings on the judgment by filing an Application for Writ of Garnishment. See Docket No. 160. The Application named Allstate as Garnishee and alleged that Allstate had control of money or personal property belonging to Poarch Brothers or was indebted to Poarch Brothers through a policy of insurance,

and that the money, personal property, or debt was not exempts from garnishment.  The Writ was issued, and on April 5, 2004, Allstate filed an Answer to the Writ.  See Docket No. 166.  In its Answer, Allstate denied having any money or property belonging to Poarch Brothers and denied being indebted to Poarch Brothers.  In an Amended Answer filed July 19, 2004, Allstate admitted that it issued two insurance policies to Poarch Brothers, but affirmatively stated that the insurance policies did not provide coverage for Plaintiff's Complaint against Poarch Brothers.  See Docket No. 176.

In August 2004, long after this garnishment proceeding had commenced, Allstate filed a Declaratory Judgment Action ("Texas action") in the District Court of Lubbock County, Texas, a Texas state court.  Allstate named Poarch Brothers and Plaintiff Cordova as Defendants in that action.  While Allstate alleges that Plaintiff Cordova had actual notice of the Texas action, Allstate does not deny Plaintiff's assertion that he was never served in the Texas action.[2]  Poarch Brothers was apparently properly served in the Texas action and predictably failed to file an Answer.  Allstate filed a motion in the Texas action for default judgment on the basis of Poarch Brother's failure to Answer.  On December 1, 2004, the Texas state court entered default judgment against Poarch Brothers. In its judgment, the Texas state court declared that the insurance policies issued to Poarch Brothers excluded coverage for bodily injury arising from

---

[2]Plaintiff's assertion is supported by the fact that Allstate sought and received default judgment against Poarch Brothers but did not seek default against Plaintiff Cordova.  In its Final Default Judgment, The Texas state court severed Allstate's claims against Poarch Brothers from its claims against Plaintiff Cordova and assigned a new case number to the case naming Plaintiff Cordova.  See Allstate's Exhibit D.

5

Poarch Brothers' products, that the pleadings and Judgment in the "Cordova case"[3] are based entirely on bodily injury alleged to have arisen out of Poarch Brothers' auger, and that the insurance policies provide no coverage for Cordova's injuries. The court then concluded that Allstate has no duty to defend or indemnify Poarch Brothers for any costs, experience or payment whatsoever in the Cordova lawsuit or the judgment rendered therein.

On January 21, 2005, Allstate filed its motion for summary judgment. In addition to arguing that the default judgment in the Texas action precludes Plaintiff's writ of garnishment, Allstate argues that the insurance policies at issue do not provide coverage for Plaintiff's injury. On March 16, 2005, Plaintiff filed his motion for summary judgment arguing that the Texas state court action has no preclusive effect, that the policies provide coverage for his injury, and that Allstate waived its noncoverage defense by providing a defense to Poarch Brothers without a reservation of rights.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998). In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn

---

[3]The Texas state court, when referencing "Cordova" appears to be referencing the instant case, Plaintiff Cordova, and the judgment rendered against Poarch Brothers in favor of Plaintiff Cordova.

from those facts in a light most favorable to the nonmoving party. <u>Worrell</u>, 219 F.3d at 1204; <u>Jeffries</u>, 147 F.3d at 1228. When the parties to an action file cross motions for summary judgment, a court is entitled to assume that no evidence needs to be considered other than that filed by the parties. <u>Atlantic Richfield Co. v Farm Credit Bank of Wichita</u>, 226 F.3d 1138 (10th Cir. 2000). In this case, neither party disputes the other party's undisputed material facts. Accordingly, there are no disputed issues of material fact, and the Court may resolve this case as a matter of law.

**DISCUSSION**

I.   LAW GOVERNING THIS ACTION

Plaintiff's action against Allstate is brought pursuant to New Mexico law on garnishment. Under New Mexico law, garnishment may be issued in aid of execution of judgment if the judgment debtor has no property in its possession within the state subject to execution to satisfy the judgment and the garnishee is indebted to the judgment debtor and the debt is not exempt from garnishment. N.M. Stat. Ann. 1978 § 35-12-1(B) and (D).[4] The property interests subject to garnishment are the personal property, money, wages or salary, rights, credits, bonds, bills, notes, drafts and other choses in action belonging to the judgment debtor in the garnishee's possession or under the garnishee's control. N.M. Stat. Ann. 1978 § 35-12-3(A). A Judgment creditor may garnish a debt or obligation owed by a garnishee to the judgment debtor, but the debt must be in existence at the time the writ is served and must be absolutely and unconditionally

---

[4]The statutes regarding Garnishment are found in Article 12 of Chapter 35 which relate to Magistrate Courts. N.M. Stat. Ann. 1978 § 35-12-19 makes clear that garnishment may issue in the district court and small claims court as well the magistrate court and that Article 12 or Chapter 35 applies to the issuance of garnishment in these other courts.

payable at the present or some future time.  Garland v. Sperling Bros., 30 P. 925, 927 (N.M. Terr. 1892).  The rights of a judgment creditor do not rise above or extend beyond those of the judgment debtor, a garnishee may not be placed in any worse condition by the garnishment proceedings than it would be if the judgment debtor's claim were enforced against it directly, and the liability of a garnishee to a judgment creditor is the same as its liability to the judgment debtor.  Field v. Sammis, 73 P. 617, 620-21 (N.M. Terr. 1903).  Thus, a garnishee has the same defenses in a garnishment proceeding as it would have in a direct action by the judgment debtor, and the judgment creditor stands in the shoes of the judgment debtor and can assert only those rights that the judgment debtor could assert in a direct action against the garnishee.

Plaintiff's theory in this garnishment proceeding is that Allstate owes Poarch Brothers the amount of the judgment against Poarch Brothers to the extent of the policy limits in the two insurance policies issued to Poarch Brothers because those insurance policies covered the injury to Plaintiff.  In accordance with the above law, Plaintiff stands in the shoes of Poarch Brothers in this garnishment proceeding and can collect only what Poarch Brothers would be able to collect if Poarch Brothers proceeded directly against Allstate.  If the insurance policies issued by Allstate to Poarch Brothers do not provide coverage for Plaintiff's injuries, Poarch Brothers would be unable to collect anything from Allstate to cover the judgment against it and Plaintiff cannot recover anything in this garnishment proceeding.

II.     IS THERE COVERAGE FOR PLAINTIFF'S INJURIES UNDER EITHER OF THE POLICIES?

The parties do not make clear what state's law should be applied in determining whether the insurance at issue contains coverage for Plaintiff's injuries.  Both parties' briefs contain

references to the law of New Mexico and the law of Texas. A federal court must apply the choice of law principles of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Century 21 Real Estate Corp. v. Meraj Intern. Inv. Corp., 315 F.3d 1271, 1281 (10th Cir. 2003). Accordingly, I will apply the choice of law principles of the State of New Mexico in determining whether the laws of Texas or the laws of New Mexico apply to the interpretation of the insurance policy at issue in this case. Under New Mexico law, insurance policies are interpreted by the same rules that govern the interpretation of contracts. Rummel v. Lexington Ins. Co., 945 P.2d 970, 976 (N.M. 1997). Under New Mexico choice of law regarding contracts, the law of the place where a contract was executed generally applies to the contract. Shope v. State Farm Ins. Co., 925 P.2d 515, 517 (N.M. 1996). Poarch Brothers was a Texas corporation. See Amended Complaint ¶ 3 [Docket No. 43]. The insurance policies issued by Allstate to Poarch Brothers were issued to Poarch Brothers in Hereford, Texas. See Defendant's Exhibits A and B. Several of the Endorsements to each of the policies are specific to Texas. See Id. Thus, the policies were issued to and executed in Texas, and the Court will apply Texas law in determining whether the policies at issue provide coverage.

      Texas courts interpret insurance policies according to the rules of contract construction. Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). "In interpreting insurance policies, a court must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole." Provident Life and Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex.

2003). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous." Schaefer, 124 S.W.3d at 157. "An ambiguity does not arise simply because the parties offer conflicting interpretations." Id.; see also Valmont Energy Steel, Inc. v. Commercial Union Ins. Co., 359 F.3d 770, 773 (5th Cir. 2004) ("The fact that parties disagree as to coverage does not create an ambiguity."). Parol evidence is not admissible to create an ambiguity. Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998). "An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations." Schaefer, 124 S.W.3d at 157. Only if a contract is determined to be ambiguous may a court consider the parties' interpretations and admit extraneous evidence to determine the meaning of the policy. CBI Indus., Inc., 907 S.W.2d at 520. Insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage, Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984), and any exclusionary language must be construed in favor of the insured as long as that construction is not unreasonable, Balandran, 972 S.W.2d at 741. However, the rule of construction in favor of the insured applies only if the policy is found to be ambiguous. Puckett, 678 S.W.2d at 938; Hargis v. Md. Am. Gen. Ins. Co., 567 S.W.2d 923, 924-25 (Tex. App. 1978). If a court finds no ambiguity, the court's duty is to enforce the policy according to its plain meaning. Valmont Energy Steel, Inc., 359 F.3d at 773.

Allstate issued both a primary policy and an umbrella policy to Poarch Brothers. The Declarations page of the primary policy states that, "Where there is no limit shown, there is no coverage." Allstate's Exhibit A. The Declarations page then lists the limits of coverage. The amount of $1,000,000 is given as the general aggregate limit of coverage for "Other than Products - Completed Operations." Id. The aggregate limit of coverage for the "Products -

10

Completed Operations" is stated as "DOES NOT APPLY." Id.  Section I Coverage A of the primary policy covers bodily injury and property damage and states, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' **to which this insurance applies**." Id. (emphasis added).  The term "Products - Completed Operations Hazard" is defined in the policy as all "bodily injury" and "property damage" occurring away from premises you [the insured] own or rent and arising out of "your [the insured's] product" or "your [the insured's] work" except: (1) products that are still in your [the insured's] physical possession; or (2) work that has not yet been completed or abandoned. Id. An endorsement to the policy titled "EXCLUSION - PRODUCTS - COMPLETED OPERATIONS HAZARD" states that "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products completed operations hazard." Id.

Plaintiff urges the Court to find the policy language ambiguous and interpret the exclusion as merely preventing stacking of coverage for "bodily injury" under Section I Coverage A. However, the language of the policy and the exclusion, when read together as a whole, is clear and unambiguous and susceptible to only one reasonable interpretation.  The Declarations page and the exclusion make clear that the primary policy does not cover bodily injury occurring away from the insured's premises or arising out of the insured's product unless the product is in the insured's possession.  See Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1 (1st Cir. 2000); Mass. Bay Ins. Co. v. Bushmaster Firearms, Inc., 324 F.Supp.2d 110 (D. Maine 2004); Ohio Cas. Ins. Co. v. Cooper Mach. Corp., 817 F.Supp. 45 (N.D. Tex. 1993); Flint v. Universal Mach. Co., 679 A.2d 929 (Conn. 1996); Wilson Indus. Elec., Inc. v. Cincinnati Ins. Co., 539 S.E.2d 612 (Ga. App. 2000).  There is no dispute in this case that Plaintiff's injuries

occurred away from Poarch Brothers' premises and arose out of Poarch Brothers' product after the product had left Poarch Brothers' possession. Thus, the primary policy provides no coverage for Plaintiff's injuries.

With regard to the umbrella policy, the Declarations page lists aggregate limit of coverage "Other than Products - Completed Operations and Automobile" as $2,000,000. Allstate's Exhibit B. The aggregate limit of coverage for "Products - Completed Operations" is listed as $0. Id. The Declarations Page also lists the exclusions applicable to the policy. Included in this list is exclusion EUL33. Id. Exclusion EUL33 states that "It is agreed that **Coverage B** of this policy does not apply to the Products - Completed Operations hazard as defined in this policy." Id. (emphasis added). The definition for "Products - completed operations hazard" is in a section of definitions applicable only to Coverage B. It states that the "Products - completed operations hazard includes all bodily injury and property damage occurring away from premises you [the insured] own or rent and arising out of your [the insured's] product or your [the insured's] work except: (1) products that are still in your physical possession; or (2) work that has not yet been completed or abandoned." Id.

There are two coverages under the umbrella policy. Coverage A is "excess liability over underlying insurance" and pays sums than an insured becomes legally obligated to pay in excess of the limits of insurance policies listed as underlying policies for losses covered by the underlying policies. Id. Coverage B is umbrella liability over the retained limit or insurance not listed in the schedule of underlying insurance. Id. Coverage B pays sums that an insured becomes legally obligated to pay in excess of the retained limit or any insurance not specified as underlying insurance. Id. The primary policy issued by Allstate is listed on the schedule of underlying

12

insurance.  Id.  Thus, if Plaintiff's injuries were covered under the primary policy, Coverage A of the umbrella policy would be applicable to Plaintiff's injuries, and the Court would proceed to construe the policy to determine whether his injuries are covered under Coverage A.  However, because the Court has determined that Plaintiff's injuries are not covered under the primary policy, the only coverage possibly available under the umbrella policy would be under Coverage B.

Reading the entire umbrella policy as a whole, including the endorsements, it is clear and unambiguous that there is no coverage for Plaintiff's injuries under Coverage B of the umbrella policy.  Plaintiff's injuries occurred away from Poarch Brothers' premises and arose from Poarch Brothers' product after the product was no longer in Poarch Brothers' physical possession.  Accordingly, the injury is included within the "Products - completed operations hazard" and is not covered.

Normally, a determination that these insurance policies do not, by their plain language, provide coverage for Plaintiff's injuries would end the case.  However, Plaintiff has argued that Allstate waived any defense of noncoverage.  Accordingly, the Court must determine whether Allstate waived its contractual defenses including that of noncoverage such that the determination that the policies did not cover Plaintiff's injuries is of no effect.  Additionally, the Court must consider whether the Texas state court default judgment has preclusive effect in this case.  The Court finds that it would benefit from oral argument on these issues and will conduct a hearing set for the time and date indicated below.

**CONCLUSION**

IT IS THEREFORE ORDERED that Allstate Insurance Company's Motion for Summary Judgment [Docket No. 196] is hereby GRANTED IN PART to the extent Allstate urges that the policies at issue do not provide coverage for Plaintiff's injuries.

IT IS FURTHER ORDERED that counsel for the parties appear for a hearing on the remaining issues on Monday, July 18, 2005 at 10:00 a.m. at the Pete V. Domenici United States District Courthouse, 333 Lomas Blvd. NW, Bonito Courtroom–5th Floor, Albuquerque, New Mexico. To conserve judicial resources, parties are required to notify the Court as soon as possible if settlement of any motion will be reached. The time allotted for this hearing is two hours. If counsel determine that this hearing will require more than two hours, please contact Richard Garcia, Courtroom Deputy to Judge William P. Johnson, at (505) 348-2333. The parties themselves will not be excused from appearing at the hearing.

_____
UNITED STATES DISTRICT JUDGE